OPINION OF THE COURT
Wachtler, J.
We are called upon in this case to consider the extent of the limitations upon the power of the Commissioner of Health of the State of New York (Commissioner) to suspend summarily a physician’s license to practice medicine pending disciplinary hearings. We hold that, pursuant to subdivision 12 of section 230 of the Public Health Law, the Commissioner has the power, in appropriate circumstances, to order a physician to discontinue the practice of medicine in any form. The statute does not, however, permit the Commissioner to continue such a suspension in the usual case beyond the 60-day period provided in the statute.
Petitioner was a physician licensed to practice medicine in the State of New York and engaged in that practice in Kingston, New York. On April 23, 1981 proceedings were commenced by the State Board for Professional Medical Conduct against petitioner by service of a statement of charges. The statement sets forth several specifications of professional misconduct (as defined by Education Law, § 6509), for the most part charging petitioner with gross negligence and/or gross incompetence in the care and treatment of pregnant women and newborns in connection with petitioner’s controversial home birthing practice. *357 Hearings were held on July 7 and August 10, 1981, at which evidence in support of these charges was presented. On October 15, the statement of charges was amended to include several additional instances of alleged professional misconduct arising from the home delivery practice. After further hearing on November 10, the hearing panel filed a recommendation with the Commissioner that he take summary action against petitioner.
On November 18, the Commissioner determined that the deficiencies in the medical practice of petitioner had given rise to an imminent danger to the health of the people of New York State and therefore directed petitioner to discontinue the practice of medicine in any form for a period of 60 days. Petitioner’s challenge to this order by way of a CPLR article 78 proceeding was successful (Matter of Wootan v Axelrod, 111 Misc 2d 688, affd 87 AD2d 913). The Appellate Division held, in affirming Supreme Court’s judgment annulling the suspension order, that the Commissioner had exceeded his statutory authority in prohibiting petitioner from all practice of medicine, when the charges and specifications concerned petitioner’s home birthing practices only (87 AD2d, at p 914).
While the article 78 proceeding was in progress, the hearing panel had continued its activities, holding three days of hearings in December of 1981, two days in January of 1982, and one day in each of the months of February and March. On January 14, the statement of charges was amended a second time to include additional allegations concerning petitioner’s care and treatment of his home birthing patients. On February 9, the statement was again amended, to charge petitioner for the first time with professional misconduct in his general nonobstetric practice. This charge was that petitioner had practiced his profession with gross incompetence and/or gross negligence in that he had failed to treat a patient properly for ingestion of a toxic substance.
The Commissioner, for his part, had continued the effectiveness of the 60-day suspension order by issuing a second order dated January 19, 1982 and a third order dated March 19, 1982, each continuing the suspension for an additional 60-day period. Following the Appellate Divi *358 sion’s decision, which was rendered April 1, 1982, petitioner requested the Commissioner to substitute a proper order for the March 19 order then in effect. The Commissioner refused to revoke or limit that order, asserting that it was based upon different facts, including those set forth in the final amendment to the statement of charges, which concerns conduct unrelated to petitioner’s home birthing practice. Thus, the Commissioner apparently believed that the Appellate Division’s determination was not applicable to the state of facts and proceedings as they existed when his last order suspending petitioner was issued.
Petitioner then commenced a second article 78 proceeding, this time to have the March 19 suspension order annulled. In response to the petition, the Commissioner asserted that the order was based upon petitioner’s failure to give proper care to the patient who had ingested a toxic substance, as well as the deficiencies in his care of pregnant women and newborns. On the basis of the charges and the medical testimony that had been given concerning them, the Commissioner had found a “general lack of competence and disregard for basic tenets of accepted medical standards so as to necessitate the suspension of petitioner from all aspects of his medical practice”. In the Commissioner’s view, the nonobstetric incident had demonstrated that it was incorrect to assume that petitioner’s professional misconduct existed in only one area of his practice.
Special Term disagreed and again granted the petition to annul the Commissioner’s determination.* The Appellate Division reversed, essentially adopting the Commissioner’s argument that the allegations concerning the nonobstetric incident had “raised serious questions concerning petitioner’s over-all competence and compliance with the *359 basic tenets of acceptable medical standards” (91 AD2d 766). Although we agree with the Appellate Division that, given the allegations and medical testimony, an order suspending petitioner from all aspects of medical practice might properly have been issued, we nevertheless reverse that court’s order because the statute limits the effectiveness of a suspension order to 60 days except in narrowly defined circumstances. Those circumstances not existing to justify the further orders of the Commissioner, he was not authorized to issue successive 60-day orders continuing the initial suspension in effect. Thus, petitioner’s application to annul the March 19 order should have been granted.
Subdivision 12 of section 230 of the Public Health Law, permitting summary action to be taken against a physician, was enacted to fill a perceived void in the Commissioner’s ability to protect the health of the public during the pendency of disciplinary hearings against a physician (Memorandum of Sponsor, NY Legis Ann, 1977, pp 256, 257). The statute provides, in pertinent part: “Whenever the commissioner, after investigation and recommendation by a committee on professional conduct of the state board for professional medical conduct, is of the opinion that a physician is causing, engaging in or maintaining a condition or activity which in the commissioner’s opinion constitutes an imminent danger to the health of the people, and that it therefore appears to be prejudicial to the interests of the people to delay action until an opportunity for a hearing can be provided in accordance with the prehearing and hearing provisions of this section, the commissioner may order the physician, by written notice, to discontinue such dangerous condition or activity or take certain action immediately and for a period of sixty days from the date of service of the order” (emphasis added). It is petitioner’s contention that, given appropriate circumstances for the exercise of the power granted by the statute, the Commissioner is authorized only to prohibit a “dangerous condition or activity” and that this language cannot be read so broadly as to empower the Commissioner to direct a physician to discontinue the practice of medicine in any form.
Viewing the statute from the standpoint of its purpose — the protection of the health of the public from imminent *360 danger caused by the activities of a physician against whom disciplinary proceedings have been or are about to be commenced, its language must be read as granting the Commissioner authority to direct a physician to discontinue the practice of medicine entirely. It is certainly possible that the very practice of his profession by a given physician may so threaten the public health as to itself constitute the “dangerous condition or activity” contemplated by the Legislature. Indeed, the allegations and evidence of professional misconduct may involve negligence and/or incompetence so pervasive as to render it impossible to identify the specific activities or conditions creating the danger. It is unlikely that the Legislature intended the Commissioner to be without power to act in the interest of the public health in such a case. Thus, the authority to direct a suspension of all medical practice must, if warranted by the circumstances presented, be deemed to fall within the broad grant of power expressed in the statute.
Of course, the propriety of such an order in a given case depends upon the circumstances presented, and its breadth must be limited by the nature of the perceived danger. In this case, it appears that at the time the challenged order was issued, the Commissioner was justified in concluding that the practice of medicine by petitioner posed a threat to the health of the public. The Commissioner based his determination upon the extensive charges and medical testimony related to petitioner’s alleged gross incompetence in connection with his home birthing practice. Although this circumstance alone may not have been sufficient to support petitioner’s suspension from all medical practice, an issue not now before us, the broad suspension was nevertheless justified once the allegations and medical evidence went beyond petitioner’s obstetric practice to raise serious questions concerning his competence in general practice as well.
Although the Commissioner’s determination that petitioner’s medical practice presented a danger was rationally based, he nevertheless exceeded his authority under the statute in issuing the March 19 order. The statute clearly provides that the duration of any order issued pursuant to *361 it is limited to 60 days. The statute may not be read, as the Commissioner apparently would, to permit successive 60-day orders continuing the suspension’s effectiveness indefinitely. The Legislature’s intent to limit strictly the time period which an order of suspension may cover is reflected in the remainder of the statute. Thus, the Legislature has provided that within 10 days of service of the Commissioner’s order, hearings on the professional misconduct proceedings must commence, and the State Board for Professional Medical Conduct is directed to “make every reasonable effort to avoid any delay in completing and determining such proceedings” (Public Health Law, § 230, subd 12). In addition to the concern expressed that the hearing be concluded expeditiously where a suspension is in effect, the statute specifically sets, forth the circumstances under which the Legislature contemplated that the effectiveness of such an order should be continued beyond the 60-day period. Thus, if the hearing panel finds the physician guilty of the charges, the Commissioner’s order is to remain in effect until a final decision has been rendered by the Board of Regents. Further, if the physician is responsible for delay in completing the hearing, the order is continued until the panel makes its recommendation to the Commissioner. Clearly, the statutory 60-day period was meant to be the maximum time period a physician may be directed to discontinue all or part of his medical practice, except in the situations expressly provided for. Inasmuch as petitioner had already been suspended for a period in excess.of 60 days, the Commissioner could not validly issue additional orders of suspension.
This legislative sensitivity to the duration of the Commissioner’s order is, no doubt, a reflection of the importance of the physician’s substantial interest in his ability to pursue his occupation. The State has a significant interest in protecting the health of the public, but the physician’s interest in his profession is also deserving of protection, particularly at a point in the proceedings against him at which no affirmative finding of misconduct has been made. The procedural protections afforded the physician take on added significance in this context of a suspension pending the conclusion of disciplinary hearings. The Com *362 missioner’s several successive orders have operated to extend the suspension to a period greater than one year. Surely, this is not the prompt hearing and determination of the issues to which the suspended licensee is constitutionally entitled (Barry v Barchi, 443 US 55; see Ampuero v Department of Professional Regulation, 410 So 2d 213 [Fla]), and we cannot read the statute to permit an unlimited suspension of this nature. Nor can the successive orders be justified on the basis that new facts had been uncovered to support them. It is incumbent upon the board to present the charges and evidence against a physician in a manner which will allow for the expeditious resolution of the proceedings. This is particularly so when allowing the physician to continue to practice is perceived as a threat to the public health. When that is the case, completion of the proceeding within 60 days of the order insures that the danger may be properly guarded against without undue encroachment upon the physician’s interests.
Finally, we note that it is no answer to the limitations on the Commissioner’s authority expressed in the Public Health Law that the hearing panel was not guilty of “foot-dragging” and did its best to schedule hearing dates. Once the drastic remedy of suspension is imposed, the physician’s interest in expediting the proceeding becomes paramount; at that point, the State has little or no cognizable interest in delaying the conclusion of the proceeding (see Barry v Barchi, 443 US 55, supra).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, Albany County, granting the petition to annul the Commissioner’s order should be reinstated.
Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur.
Order reversed, with costs, and judgment of Supreme Court, Albany County, reinstated.

 We are informed that, subsequent to Special Term’s judgment the Commissioner acted to suspend petitioner only from the further practice of obstetrics and related infant care. This limited suspension was continued in effect by a subsequent order. In September of 1982, the suspension was continued indefinitely, due to petitioner’s having caused a delay in completing the hearing. Upon the Appellate Division’s reversal, the Commissioner again directed petitioner to discontinue the practice of medicine in any form pending the determination of the hearing panel and review by the Board of Regents. Petitioner remained suspended from practice through the date of argument of this appeal. We are further informed that, following argument of the appeal, the Board of Regents acted to revoke petitioner’s license to practice medicine in this State.